### IN THE UNITED STATES DISTRICT COURT FOR THE
### NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **DOTTIE A. WALKER** )<br>)<br>**Plaintiff,** )<br>)<br>v.                                                          )<br>)<br>**JO ANNE B. BARNHART, Commissioner,** )<br>**Social Security Administration,** )<br>)<br>**Defendant.** ) | Case No. 05-CV-134-PJC |

### ORDER

Claimant, Dottie A. Walker ("Walker"), pursuant to 42 U.S.C. § 405(g), requests judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability benefits under the Social Security Act. In accordance with 28 U.S.C. § 636(c)(1) and (3), the parties have consented to proceed before a United States Magistrate Judge. Any appeal of this order will be directly to the Tenth Circuit Court of Appeals. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that claimant was not disabled. For the reasons discussed below, the Court **REVERSES AND REMANDS** the Commissioner's decision.

### Claimant's Background

Walker was born on November 20, 1957, and was 47 years old at the time of the ALJ's decision. (R. 13, 39-40, 146). She has completed two years of college education. (R. 146). Claimant previously worked as an assembly worker, bookkeeper, accounts receivable clerk, and office cleaner. (R. 79, 156-57). Walker's last employment was working as a payroll clerk from September 2000 to August 6, 2002, the alleged onset date. (R. 45-46, 58, 85). At the hearing

before the ALJ on October 14, 2004, Walker testified she quit the payroll job because of a company mandate that she always wear shoes with enclosed toes and heel while on the job, which she was unable to do because of swelling in her foot. (R. 147).[1]

Walker alleges an inability to work beginning August 6, 2002, due to leg, knee, hip, and foot pain, stemming from a motorcycle accident on June 11, 1994. (R. 57, 85, 91, 147-49). Walker sustained fractures of the left fibula and femur and extensive soft tissue injuries to her left leg when a car struck the motorcycle she was riding and ran over her leg. (R. 103, 114-15). She was treated at the time of the accident by David A. Ball, M.D. who inserted an intramedullary rod into the left femur and performed debridement of the left lower leg, as well as skin grafts due to excessive skin loss. (R. 94-118). In 1994 Walker participated in physical therapy for ambulation and to improve her range of joint motion. (R. 120-129). Dr. Ball continued to treat Walker through June 20, 1997. (R. 94-103). X-rays taken a year after the accident showed the formation of early post-traumatic arthritis of the ankle. (R. 96-97). On December 7, 1995, Dr. Ball noted that the "patient is doing real well," and that the fractures had healed satisfactorily. (R. 95). On June 20, 1997, Dr. Ball reported that Walker had "much less problems with swelling in her leg," though she had developed "some post traumatic arthritic changes in both her knee and her ankle." (R. 94). Dr. Ball concluded at that time that no "further treatment is indicated," although future consideration could be given to a left ankle arthrodesis should her post-traumatic arthritis in the ankle progress, and to the removal of the intramedullary rod and arthroscopy of her left knee. *Id*.

---

[1] According to statements Walker made to consultative examiner, Moses A. Owoso, M.D., during her Comprehensive Internal Medical Exam on June 24, 2003, Walker quit because she did not receive a raise in her wages. (R. 85).

2

Walker returned to work in 1998 and continued working until 2002. (R.40-46). Walker did not see Dr. Ball again until January 13, 2004. (R. 93). At that time Dr. Ball noted, "[t]he patient's ankle . . . is not bothering her at the present time." *Id*. X-rays taken at that visit showed that the fracture of the distal femur was "well healed," but that there was still post-traumatic arthritis of the knee. *Id.* Dr. Ball administered an injection of methylprednisolone acetate, dexamethasone sodium phosphate and Xylocaine in Walker's hip to relieve her discomfort. *Id*. When she returned to Dr. Ball a month later, Dr. Ball noted that Walker was better, but still had "some pain in her hip." *Id.* Another x-ray was taken that showed calcification around the tip of the rod. *Id.* There are no further medical records from Dr. Ball. However, in a letter dated October 13, 2004, Dr. Ball stated that he treated Walker for extensive injuries to her left leg beginning in 1994 with his last examination of Walker on January 13, 2004, and opined that "I . . . feel she still remains disabled at the present time." (R. 91).

Walker also underwent a consultative examination by Moses A. Owoso, M.D., on June 24, 2003. (R. 85-89). According to Dr. Owoso, Claimant's lower extremities were "within functional limits," and the clinical impression was that the prior injury from the motor accident was "all healed and functionally intact and without deficits." (R. 87). The dexterity in her extremities was normal bilaterally. *Id.* Claimant's left knee range of motion was functional and there was adequate strength in all contiguous muscles. *Id.* Dr. Owoso's Range of Joint Motion Evaluation Chart showed that Walker was able to reach the maximum range of motion in hip rotation, ankle flexion and knee flexion without any pain. (R. 88). Strength in the Claimant's lower extremities muscle groups was 5/5 bilaterally. (R. 87) In straight leg raising, Walker was negative for radicular pain bilaterally. *Id.* Dr. Owoso further observed that Walker was able to

independently get on and off of the examination table, sit and stand well, and move from a sitting to a standing position normally. *Id.* Walker's gait speed was "normal and safe." *Id.* The report further stated that she suffered from no peripheral edema, cyanosis or clubbing of the extremities, nor tenderness or effusion about the knee. *Id.*

## Procedural History

On May 2, 2003, Walker protectively filed for disability benefits under Title II, 42 U.S.C. § 401 *et seq.*, and for Supplemental Security Income ("SSI") benefits under Title XVI, 42 U.S.C. § 1381 *et seq.* Her application for benefits was denied in its entirety initially and on reconsideration. (R. 24-25). A hearing was held October 14, 2004, in Tulsa, Oklahoma before ALJ Richard J. Kallsnick. (R. 137-160). The ALJ's decision dated November 22, 2004, found that Claimant was not disabled at any time through the date of the decision. (R. 12-15). On February 2, 2005, the Appeals Council denied review of the ALJ's findings. (R.4-6). Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Social Security Law and Standard of Review

Disability under the Social Security Act (Act) is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. §423(d)(1)(A). A claimant is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C.

§423(d)(2)(A). Social Security regulations establish the five-step sequential process used to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920. [2]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hargis v. Sullivan*, 945 F.2d 1482, 1486 (10th Cir. 1991).

Substantial evidence is such evidence "as a reasonable mind might accept as adequate to support a conclusion." *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2002) (citation omitted). In reviewing the decision of the Commissioner, the court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Id.* (citation omitted). Nevertheless, the court examines "the record as a whole, including whatever in the record fairly detracts from the weight of the Secretary's decision and, on that basis, determines if the substantiality of the evidence test has been met." *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800-01 (10th Cir. 1991).

---

[2]  Step One requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.972. Step Two requires that the claimant establish that she has a medically severe impairment or combination of impairments that significantly limit her ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant is engaged in substantial gainful activity (Step One) or if the claimant's impairment is not medically severe (Step Two), disability benefits are denied. At Step Three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App.1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to Step Four, where the claimant must establish that she does not retain the residual functional capacity ("RFC") to perform her past relevant work. If the claimant's Step Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant numbers in the national economy which the claimant, taking into account her age, education, work experience, and RFC, can perform. *See Dikeman v. Halter*, 245 F.3d 1182, 1184 (10th Cir. 2001). Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. 20 C.F.R. §§ 404.1520, 416.920.

**Decision of the Administrative Law Judge**

The ALJ made his decision at the Step Two of the sequential evaluation process. (R. 12-15). The ALJ found that Walker had not been engaged in substantial gainful activity beginning on the date of the alleged onset of the disability. (R. 15). He found that although the claimant had a medically determinable impairment, status post fractures of the left leg, she had not established that it was a severe impairment significantly limiting the ability to conduct her basic work-related activities. *Id*. The ALJ thus concluded that she was not disabled under the Social Security Act at any time through the date of the decision.

**Review**

Claimant asserts as error that the ALJ (1) failed to provide a proper waiver of counsel opportunity; (2) failed to fully develop the record; (3) performed an improper evaluation at step two of the five-step evaluation process; (4) failed to perform a proper credibility determination; and (5) failed to give the treating physician determination proper weight.

**(A)     Waiver of the Right to Representation**

Walker argues that the ALJ failed to provide her with a proper waiver opportunity due to an inadequate explanation of her right to obtain counsel. Specifically, she argues there was a lack of substantial detail in the explanation given by the ALJ. She states that the ALJ gave an unacceptable conclusory explanation as to the nature of the contingency fee, and failed to inform her the fee is capped at 25% of past due benefits and must be approved by the court. Walker relies on a Seventh Circuit opinion that states:

> To ensure a valid waiver of counsel, we require the ALJ to explain to the *pro se* claimant (1) the manner in which an attorney can aid in the proceedings, (2) the possibility of free counsel or a contingency arrangement, and (3) the limitations on attorney fees to 25 percent of past due benefits and required court approval of the fees.

*Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994).

The Tenth Circuit, however, does not require the same level of detail in the explanation of a claimant's right to counsel for a waiver of that right to be valid. *Carter v. Chater*, 73 F.3d 1019, 1021 (10th Cir. 1996). In *Carter*, the Tenth Circuit held that the claimant was advised of the right to counsel prior to the hearing and had effectively waived that right when she was given notice of her right to counsel in three separate notices during the process. The circuit court found that although "the customary and better practice" is to place the advisement and waiver on the record of the hearing, "neither the pertinent statute, *see* 42 U.S.C. § 406(c), nor the regulations, *see* 20 C.F.R. § 404.1706, nor our previous cases require any more advisement than was given in this case." *Id.* (citing *Garcia v. Califano*, 625 F.2d 354, 356 (10th Cir. 1980)).

Here, Walker was notified of her right to obtain counsel in five separate notices, and the ALJ again notified her of the right on the record at the hearing. In the "Request for Hearing" form signed by Walker was a notice of the right to be represented at the hearing and of the availability of referral services. (R. 34). Contained in the notice of denial of benefits, dated July 2, 2003, and in the denial of reconsideration, dated November 14, 2003, were identical notices of the right to counsel which state:

> You can have a friend, lawyer or someone else help you.  There are groups that can help you find a lawyer or give you free legal services if you qualify.  There are also lawyers who do not charge unless you win your appeal.  Your local Social Security Office has a list of groups that can help you with your appeal.
> If you get someone to help you, you should let us know.  If you hire someone, we must approve the fee before he or she can collect it.  And if you hire a lawyer, we will withhold up to 25 percent of any past due benefits to pay toward the fee.

(R. 27, 32). Walker was also advised of the right to representation in the notice of the hearing. (R. 17).

At the hearing, Walker was again notified of the right and need to obtain representation. The ALJ asked Walker whether she had received and read the notice of the hearing and the acknowledgment letter, to which she answered that she had received them and had read the acknowledgment letter. (R. 139-140).  The ALJ then gave Walker the chance to postpone the case while she secured representation and explained how Walker could secure counsel at no charge: "In the event that you cannot afford to hire one, they have legal services and other agencies that can represent you at no cost to you.  There are also attorneys that take cases on -- and non-attorneys that take cases on contingency fees." (R. 140).  At that point she was given a form indicating the right to representation. *Id.* Again the ALJ asked whether she wanted to postpone the hearing to obtain counsel. (R. 140-141).  Walker simply answered, "I want to proceed today." (R. 141).  She was then asked two more times whether she was sure she wanted to waive representation and to proceed alone. *Id*.  She answered in the affirmative both times. *Id.* Following some examination of the file, the ALJ explained that the file was not favorable to Walker and in an effort to impress on Claimant that the regulations were difficult and had to be followed specifically, again asked - "are you sure you don't want to go talk to Legal Aid or someone, some attorney."  (R. 143).

Like the situation in *Carter*, Walker was notified of the right to obtain counsel in the various notices she received during the course of the process.  In addition, Walker was repeatedly notified by the ALJ at the hearing of her right to counsel and the availability of free or contingency representation and waived that right on the record.  Based on the above facts and the applicable Tenth Circuit law, the Court finds Walker was sufficiently informed of the right to counsel and knowingly waived her right.

**(B)     Duty to Develop the Record**

Walker further argues that she was prejudiced by the ALJ's failure to fully and fairly develop the record. Specifically, she argues that Dr. Owoso should have taken x-rays of her left leg when she requested that he do so, and therefore it was the ALJ's responsibility to order that x-rays be taken. The Commissioner counters that the ALJ fully developed the record by obtaining Claimant's relevant medical records after the hearing. The Commissioner argues that the ALJ is not required to further develop the record because there was sufficient evidence on which to base a decision. It is the Commissioner's position that the record contained x-rays and that there were no new injuries that would necessitate further x-rays.

The claimant bears the burden of providing medical evidence sufficient to prove a disability. *Baca v. Dept. of Health and Human Services*, 5 F.3d 476, 479 (10th Cir. 1993). The ALJ's basic duty in every social security case is "to ensure that an adequate record is developed during the disability hearing consistent with the issues raised." *Henrie v. U.S. Dept. of Health & Human Serv.*, 13 F.3d 359, 360-61 (10th Cir. 1993). Due to the nonadversarial nature of the Social Security disability hearing the ALJ is under "a basic duty of inquiry 'to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts.'" *Dixon v. Heckler*, 811 F.2d 506, 510 (10th Cir. 1987)(quoting *Heckler v. Campbell*, 461 U.S. 458, 471 & n. 1 (1983)(Brennan, J., concurring)). This duty is heightened when the claimant is unrepresented at the hearing before the ALJ. *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). At the hearing the ALJ should "ask[] sufficient questions to ascertain (1) the nature of a claimant's alleged impairments, (2) what on-going treatment and medication the claimant is receiving, and (3) the impact of the alleged impairment on a claimant's daily routine and activities." *Id.* at 1375.

The ALJ's duty to develop the record requires that he "obtain[] pertinent, available medical records which come to his attention during the course of the hearing." *Carter*, 73 F.3d at 1022.

At the hearing, the ALJ asked the Claimant: "Tell me what happened at the point where you stopped working. What was your medical impairment? What was your problem?" (R. 147). Walker replied that her foot would swell to such extent that she was forced to remove her shoe and that the company required her to keep her shoes on at all times while working, causing her eventually to quit her job. *Id.* The ALJ later asked: "are you taking any medicine at this time?" to which Walker replied "I take Aleve and Naproxen." (R. 148). The ALJ also inquired as to whether Walker had any pain. (R. 149). Walker replied that she had pain in her left hip, knee, and foot. *Id.* The ALJ also learned that Walker had not been hospitalized or treated since February of 2004, the date of her last visit to Dr. Ball. (R. 93, 149). Regarding the impact of the impairment on Claimant's daily routine or activities, Walker responded at the hearing that she was able to cook, do household chores, watch television, take baths, drive a car, and shop for groceries. (R. 149-50).

The Court finds that the ALJ did not err in failing to develop the record. When advised by Walker that Dr. Ball's medical records should be in the record, the ALJ obtained the records. (R. 154). Dr. Ball's January and February 2004 notes state that x-rays were taken at that time. Those x-rays showed the distal femur had healed. *Id.* They also showed that the locked intramedullary rod was in place yet had some calcification around the tip, but otherwise Dr. Ball noted, "I do not think that she is having enough trouble to warrant removal of the rod." *Id.* The x-rays further indicated post-traumatic arthritis of the knee. *Id.* Additional x-rays by a consultative examiner were unnecessary. Walker suffered no new injury which would require another x-ray after the

ones taken by Claimant's treating physician in January and February of 2004. (R. 93). The ALJ satisfied his duty to develop the record by obtaining Walker's available medical records from Dr. Ball after the hearing was conducted. Repeat x-rays were unnecessary because the ALJ had sufficient evidence in the record on which to make a decision.

**(C)  Step Two Analysis**

Walker argues that the ALJ performed an improper evaluation at Step Two in the five-step sequential evaluation process by finding her impairment to be not severe. Specifically, Walker argues that the ALJ failed to consider the combined effects of her impairments, her statements, medical records, x-rays, photos, and observations made by agency employees; therefore, his decision was not supported by substantial evidence. Walker claims that her injuries are severe and significantly limit her ability to do basic work activities. Claimant also argues that the ALJ erred by failing to make a credibility determination regarding her allegations of pain and physical limitations and in ignoring Dr. Ball's opinion.

The Commissioner responds that the ALJ was correct in finding that Walker did not meet her burden in proving the existence of a severe impairment as neither Claimant's statements nor the mere diagnosis of an impairment without any resulting functional restrictions was sufficient to satisfy Claimant's burden. The Commissioner further argues that the ALJ properly concluded that Walker's pain allegations were not reasonably consistent with the objective medical evidence and the ALJ did not need to address Dr. Ball's opinion as no RFC determination was made.

At the second step in the sequential evaluation process, a claimant must establish the presence of a severe impairment which significantly limits the ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). For an impairment to give rise to disability benefits it

11

must stem from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).  If a claimant is unable to satisfy the showing that the "impairments would have more than a minimal effect on his ability to do basic work activities," the claimant is ineligible for benefits.  *Id*.; *Bowen v. Yuckert*, 482 U.S. 137, 158 (1987)("Only those claimants with *slight* abnormalities that do not significantly limit any 'basic work activity' can be denied benefits without undertaking" the subsequent steps of the sequential evaluation process.)(emphasis added);  *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004).

Social Security Ruling ("SSR") 96-3 sets forth the process for a Step Two determination: (1) the claimant must have a medically determinable impairment; (2) this impairment must reasonably be expected to produce the alleged symptoms and (3) once the claimant establishes the requisite connection between the medically determinable impairment(s) and alleged symptom(s), the Commissioner is to then consider the  "intensity, persistence, or functionally limiting effects of the symptom(s)" to determine whether the limitation is severe; that is, whether it has more than a minimal effect on the claimant's ability to do basic work activities. SSR 96-3p.

The ALJ found that Walker's status post fractures of the lower limb constituted a medically determinable impairment.  Further, the requisite connection between the impairment and Walker's alleged pain and edema in her left leg, knee and ankle was not called into question.  Therefore, the ALJ's finding at Step Two that Walker's impairment was not severe must turn on a determination of the "intensity, persistence, or functionally limiting effects of the symptom(s)." This "requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects." SSR 96-7p.

Walker testified that as a result of her left leg injury, she could not wear enclosed toe-and-heel shoes due to swelling in her left foot; she experienced pain in her left hip, knee and foot; she could not stand for more than fifteen minutes before her foot started to swell and hurt and could not sit for more than twenty minutes without her foot turning purple and her leg going to sleep. (R. 147, 150-53). Yet, the ALJ made no finding regarding the credibility of her testimony. The ALJ apparently concluded that Walker's impairment was not severe because of the lack of objective medical evidence, noting that the medical record pertained mainly to the period of her prior application, and that the records from the current period showed "nothing remarkable." *Id.*

Assuming *arguendo* that Walker's January and February 2004 medical records from Dr. Ball showed "nothing remarkable,"[3] the ALJ was still required to make a finding on the credibility of Walker's testimony regarding her symptoms in light of the entire record. Such is clearly required "whenever the individual's statements about the intensity, persistence or functionally limiting effects of pain or other symptoms are not substantiate by objective medical evidence." SSR 96-7p.  The regulations require this consideration because "symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone." 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

---

[3]   The Court questions whether Dr. Ball's records of Walker's January and February 2004 visits note "nothing remarkable."  Dr. Ball reported on January 13, 2004 that x-rays showed that although the fracture of the distal femur was "well healed," there were post-traumatic changes in Walker's left knee indicating arthritis. (R. 93).  Also, the records show that Dr. Ball administered an injection in Walker's hip to relieve her discomfort; yet, she continued to have some pain in her left hip.  *Id.*

Although the ALJ cited and even emphasized the appropriate analysis in SSR 96-7p,[4] he did not accordingly make a "finding on the credibility of the individual's statements based on a consideration of the entire case record," including "the individual's own statements about the symptoms," and "any statements and other information provided by treating . . . physician[] . . . about the symptoms and how they affect the individual." *Id*. There is no finding on Walker's credibility and thus no assessment of her credibility in light of her own statements or Dr. Ball's October 13, 2004 statement that Walker was disabled. Dr. Ball's statement is clearly a statement by the claimant's treating physician about how her symptoms affect her and thus should have been considered in assessing her credibility at Step Two. SSR 96-7p.

On remand, the ALJ should assess the credibility of Walker's testimony in light of the entire record, including her statements as to the severity of her symptoms (R. 147, 150-53), the photographs she submitted (R. 75-78), the observation of the agency employee that Walker "walked slowly with a limp," (R. 67) and Dr. Ball's medical records and his October 14, 2004

---

[4] The ALJ cited SSR 96-7p which states in pertinent part the following:
  . . . once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, **the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. This includes the medical signs and laboratory findings, the individual's own statements about the symptoms, any statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record**.
SSR 96-7p (emphasis in decision).

statement regarding her disability[5] (R. 91, 93).  Because the Court finds that the ALJ failed to properly evaluate all the evidence relevant to the determination of the severity of Walker's impairment at Step Two, the decision must be **REVERSED AND REMANDED** for further proceedings consistent with this order.

DATED this 5th day of July, 2006.

Paul J. Cleary
United States Magistrate Judge

---

[5]  In considering Dr. Ball's opinion regarding Walker's disability, the ALJ must include specific reasons for whatever weight that is given to the treating physician's opinion so that any subsequent reviewers are clear as to the weight given and the reasons supporting that decision.  *Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003)(remanding because the court "cannot simply assume the ALJ applied the correct legal standards in considering" the treating physician's opinion).